Case number 14-7190. Sandra Marshall, Appellant, v. Honeywell Technology Systems, Inc., et al. Ms. Miles for the Appellant, Mr. Otato for the Appellee. Ms. Miles? Good morning, Judges Henderson, Griffith, and Randolph. My name is Joanne Miles, and I am the Attorney for the Appellant, Sandra Marshall. And in this particular case, I filed on behalf of Ms. Marshall a brief concerning the issues that she feels should be reversed by this court as to what occurred in the District Court of the District of Columbia. Ms. Marshall had a case that was a discrimination case. And in that particular case, she had her case dismissed based on a motion for summary judgment and based on the doctrine of judicial estoppel. And we believe that the court did not apply the correct standard or legal standard in which it dismissed her case. And we felt that there was sufficient evidence in the record to show. What's the correct legal standard in our circuit for judicial estoppel? Well, I think when I read Moses, and goodness, I've read it several times, I think Moses doesn't really have a standard per se. But if you want to say it had a standard, I don't think it's as strict or as narrow as the District Court applied in this particular case. Because in this particular case, when I read the judge's opinion and memorandum, it appears that he had a very narrow interpretation of how to apply judicial estoppel as to Marshall and as to the facts and the events that occurred in her particular case. It appeared as if no matter what evidence Marshall presented to show she had no intent to not file schedules that may have required to be filed in the bankruptcy, any evidence she presented to show she was not deliberate or had any intent of not being truthful. The District Court used the word deliberate to describe the omissions on her filing. Right. It said it was deliberate. Right. And I don't think that it was deliberate. I think she didn't know. She was a pro se litigant. You lost that, right? At District Court, the District Court judge said it was deliberate. Yes, I understand that's what the District Court said. In what way was that error? Well, it was an error in this way. When you look at the word or interpretation or meaning of deliberate, it would mean, and this is on behalf of Marshall, that she would have knowledge of something that she had to do and then purposely didn't do it. Well, she did, didn't she? No, she did not. Did she not read the instructions on the form? She read the instructions. Okay, I'm sorry. Well, it was her understanding. Her understanding was that she had done that. It was her understanding as a pro se litigant, who is not a lawyer, who has no legal training or interpretation, that that is what she did. Well, she knew that she had an EEOC claim at the time, right? She knew that. Yes, she did know that she... Yes, she did. And she put that down, right, that she had been a defendant. That's correct. And she didn't put down that she had an EEOC claim. No, because I think, and I think she explained... Even though the form said, the form was not restricted to lawsuits, it said administrative proceedings. Right, and I don't think that's her interpretation was that particular EEOC proceeding was in that category. Because I think when you read her transcript from the hearing that she had initially with the trustee, her thing, and I think you can interpret this, was that because it wasn't a formal filed lawsuit, then that she wasn't supposed to include it. But even if, say she should have, well, we know she should have included it. When you apply the doctrine of judicial estoppel, it's an equitable doctrine, which requires equitable considerations. And it should be considered in a broad context, because judicial estoppel is a doctrine that is discretionary. And when you look at the bankruptcy code, the bankruptcy code does allow and gives provisions in which a party can disclose information in a number of ways. It's your stronger argument that in fact she told the trustee. Oh, absolutely. That there's no fraud upon the court here. Correct. Because she told the trustee, and the trustee, that became part of the bankruptcy proceedings, right? Right, he acted on it. No one was cheated out of it here because she told, is that... No, absolutely. Whatever she understood, apparently she didn't understand something because she didn't do what she was supposed to do, and we don't deny that as to the schedules. But what happened was when she did her hearing with the trustee, he apparently had interrogatories of questions he gave to everybody. Now, if she wanted to defraud or lie, that was her opportunity. She could have just said... What about the fact that there's evidence, she said she filled out these forms by herself, but there's evidence that she didn't, right? Well, it was evidence that there was a guy, and I wasn't quite clear on that, but it was a guy who supposedly helped her. Now, from what she said was in the record, she didn't pay the guy, and he probably did help her somewhat, but she said she did most of the work as well. So he may have helped her a little, but I think she did most of it herself, and she said it took her a little while to figure out how to do it. So here's the question I have. You're asking that we take a broad view of mistake, right? I mean, there's a circuit split on this issue of what a mistake is. You want us to take the broader view, the one that the Seventh Circuit and others have taken, but here's my concern about taking that. If we take that broader view, doesn't that give an incentive to debtors to sandbag? Oh, no. No, absolutely, because in this particular case, Marshall was totally different than Moses. Marshall had no attorney representing her in bankruptcy court. I'm not a bankruptcy court. And there was no oral disclosure in Moses either, was there? Absolutely not, and he went to bankruptcy twice, and he had a bankruptcy attorney twice. And that's what happened in Moses. Marshall was doing this on her own. She categorically disclosed in her interrogatories that he was the case. So what's the rule you would have us follow for mistake? How are we supposed to figure out whether a mistake is of the nature that it should withstand a claim of judicial estoppel? When does a mistake stop a judicial estoppel? I think when a mistake, I think you look at, first of all, the facts or circumstantial or direct evidence as to intent of the party. I think you have to look at what did they do or did not do, and whether whatever they did or didn't do hurt anybody. Because Marshall was not trying to not disclose the information. She disclosed it. She may have disclosed it imperfectly, or she may have disclosed it incorrectly in the sense that she didn't amend her schedules, but she did disclose it. But that's going to involve the courts getting into very lengthy sorts of fact-intensive inquiries here, right, to get into the subjective intent of each person. Why isn't it just simpler? You've got the form. You're signing under the penalty of perjury. The form's clear. It says administrative proceedings. Is that something that... I think it's clear to us as lawyers, but I represent many litigants who do not perceive and interpret what we perceive as plain language. For example, I'll give you an example. I do criminal cases. I've asked clients, have you ever committed a crime? They will only tell me about a theft. They don't tell you about traffic offenses they may have committed, because in their minds, a traffic offense is not a criminal offense. And there are many traffic cases or types of traffic violations that are criminal cases as well. And so when you explain to them that you have to divulge that as well, they'll tell you, oh, I never knew that traffic cases were or could be a criminal case. And so the issue is what was in her mind. The point is she didn't do anything. She had no intent to, you know, deceive the court. She told the court or the trustee what her claims were. The trustee spoke to me directly. We had a long conversation. So he took notes and he acted on it. The only thing that Marshall made a mistake of and didn't know or didn't understand was that she still, even though she verbally disclosed her case, she still had to go back and amend her schedules, which she didn't know that she was supposed to do. And so, but no one was harmed by that because the trustee did open up her case again, gave the creditors the opportunity to file any claim against her for any potential assets. He did not dismiss her or discharge her case immediately. So he did act upon the information. The kind of harm that you're talking about would be present in any case, regardless of how the information regarding an undisclosed action came about. For example, if she had never told anybody and the trustee on his own suddenly discovered she had three discrimination cases pending, you could say the same thing because the trustee discovered it and nobody was harmed. So that's going to be true in every case, unless the bankruptcy proceeding is all over, but then you can reopen it. So I don't know where that gets you. Well, I think what happens in this particular case, like I said, for Marshall, all I'm saying is that her actions did not show that she did anything purposefully or was trying to deceive anybody. It's correct that there were three administrative proceedings, right? Right. There was three and she talked about one and I disclosed the other cases to the trustee. She only disclosed one of them. She disclosed one, I think, yes, at the hearing. I looked for, and I don't find in the joint appendix, the interrogatories. Oh, I'm glad you mentioned that. I thought that was interesting. The interrogatories that Apolline mentioned, those interrogatories were interrogatories created by the trustee. Marshall did not get a copy of those, but I will tell you this, that I took it upon myself to investigate to try to get a copy. And the trustee told me that those, her files had been destroyed because after three years, he's not required to keep it. Because I thought the interrogatories would be very instrumental in showing what was the question that was asked that caused Marshall to disclose that she had the EEOC case. And I thought that was, you know, thinking of evidence or evidentiary purposes, that would have said, okay, for some reason, whatever language the trustee used in that interrogatory, it told her in her brain, oh, I do have this administrative charge or EEOC case and I will disclose it and I'm going to disclose it. What if the interrogatories no longer exist? I was told they no longer exist. Is there any additional evidence that you would put on? I mean, this was decided on summary judgment. Yes, it was decided on summary judgment. So what, if any, additional evidence would you present if it wasn't on summary judgment? What additional evidence? You mean, if you had to go to trial to? Yeah. Or a hearing, an evidentiary hearing on the question of judicial estoppel, I don't know if it would be trial. Well, short of subpoenaing the trustee, I mean, you could always, I mean, we could always ask the trustee to come forward to testify or obtain a copy of these interrogatories, which I understand are kind of on a standard which they use. What does the trustee add to the state of the record as it exists now? Because there's no dispute, is there, that the trustee was told by you of the three administrative proceedings and that your client disclosed the Honeywell? Well, I think there is a dispute. I don't think the district court judge accepted that as fact. In fact, I think the district court judge kind of denigrated the, I think I'm just about out, denigrated the affidavits that were presented and any evidence we presented at the motion for summary judgment level. And I thought that a lot of things were in dispute in which a motion for summary judgment could not have been granted. But I think we also could probably get copies of the interrogatories that the trustees in the District of Columbia. Your statement of material facts not in dispute indicated that, number one, your client told the trustee about the Honeywell and that, number two, you disclosed the other. I disclosed the other three cases. Other facts not in dispute. Now, did the defendants in this case put a statement in indicating that they were in dispute? They never, I can't remember, but I know it was not disputed. Well, that was my question. Yeah, it was not disputed. Much of the evidence we put in was never disputed. And the district court found that. I'm looking at his opinion. During the hearing, Marshall noted that she had a pending EEOC claim against Honeywell only. But he did not put in his opinion anything concerning the affidavit that I gave or any of the evidence that I presented. In fact, it was ignored completely. That memorandum is void of any mentioning concerning the affidavit or evidence that I presented. And I thought that was key because it put it in a totally different light. All right. Okay, thank you. Mr. Machado. Good morning, and may it please the court. My name is Leston Machado. I stand up here on behalf of all of Leopolis, joined by counsel at council table. Judge Griffith, to your question, there is a commonly followed test, followed by Moses, identified by the Supreme Court in New Hampshire, and followed by virtually all the circuits. And that's the test that the district court here properly followed. It looks at whether there were inconsistent positions taken. It looks at whether it led to at least one court being misled. It looks at whether it would have allowed Ms. Marshall to obtain an unfair advantage or impose an unfair burden. Under that commonly applied test applied by this court and Moses, under virtually identical facts, the district court Virtually identical. There's a huge difference between this and Moses, right? There's no oral disclosure. Moses, that's the whole case right here, the significance of this oral disclosure and whether the district court properly weighed it. So Moses doesn't get you too far. Well, certainly there was no oral disclosures in Moses. Right. And isn't that the key issue here? At least it is for me. The key is here. What effect does that oral disclosure have? Absolutely. Does it show that this was in fact a mistake, which if it's a mistake may have legal consequences for the judicial estoppel here? Absolutely, Your Honor. I think what the district court looked at was, and to the last colloquy, the district court did not disagree or dispute that these oral disclosures occurred. As you properly pointed out, the opinion reflects that these oral disclosures occurred. What the district court found is, as most circuit courts have found, oral disclosures or oral conversations of the type that happened here are not enough to overcome the bankruptcy court rules, which require accurate, truthful, and complete. But we've got three circuits that feel differently than that, right? You've got three circuits, what, three, seven, and nine, who disagree with that. Well, okay. We haven't weighed in on it yet. So the Ninth Circuit in the Ockwin case said that in that case, actually I'm not sure Ockwin involved oral disclosures, honestly. I think Ockwin involved someone who went back. I'm talking about the general issue of mistake, the significance of mistake. Absolutely. There's a difference among the circuits on how to interpret what mistake or inadvertence mean. And the majority of the circuits have a very narrow view of that. Is it majority? I could only count three, but maybe. That's a brief conical. I think it's in favor of a narrow view of mistake or inadvertence. The Ninth Circuit took a broader view, acknowledged that it was disagreeing with most of the other circuits, but took a broader view because in that case, the plaintiff, the debtor, upon the omission being discovered, went back to the bankruptcy court, reopened the bankruptcy court proceeding, and filed corrected schedules. And the Ninth Circuit said, well, given this do-over, we think that we need to take a broader view of whether this was true. Didn't that happen in Moses? That's exactly right, Judge Randolph. In Moses, this circuit has already found the do-over doesn't count. In Moses, the debtor went back to the bankruptcy court also, refiled corrected schedules. And this circuit joined a number of other circuits and said, we're not going to count on such efforts because that allows people to avoid doing it properly the first time until they're caught and then are being forced to accept it. I think Judge Edwards, in fact, quoted another opinion saying just what you said. That's exactly right. So the Ninth Circuit's broader view of mistake or inadvertence was based upon the do-over. And in fact, in the Ninth Circuit decision, they say, had the person here not done that, we would join all the other circuits in adopting a narrow view of mistake or inadvertence. But here, we take into account this conduct in returning and correcting. And based upon that, we think that the district court erred in adopting this narrow view. We're going to remand it back in order to consider the entire record. The district court, JA 509, says, as noted in Moses, inadvertence or mistake is not enough to ward off the application of judicial estoppel. Is that right? I think what the district court, certainly, inadvertence or mistake is an available remedy. Right, back to New Hampshire, it's clear. Absolutely. The New Hampshire court makes it at least allude to the fact. So what do you make of the district court statement there? I think what the district court was saying was what this circuit did in Moses was look at identical facts on this point, which was the plaintiff in Moses was arguing, well, it was a mistake or inadvertent. And the district court in Moses said, no, we're not going to accept mistake or inadvertence when the record shows what you alluded to earlier, when the record shows that the documents are clear on their face as to what's required. So where has the district court, in its opinion, weighed the evidence? And it seems to me you've got the evidence that you just cited. You've got the fact that she filled out this form and it was incomplete. But then, on the other hand, you have this testimony that she told the trustee about it. Where does the district court weigh that? Because that's what's going on. Sure. Moses is making a decision that making a finding fact that it was deliberate, right? Where do we have that here? Two answers, Your Honor. One is what the district court is saying is that the facts here are identical to Moses on the completion of the forms. In Moses, as here, the plaintiff is arguing, I made a mistake, or does that mean something? The forms reflect otherwise. The forms reflect that you included actions in which you were a defendant which benefited you, made you look like you had greater exposure, greater debts, but you omitted ones in which you were pursuing affirmative claims. Looks bad. Yeah, that looks bad. And so on that fact, it's saying this is identical to Moses. On the oral disclosures, the court's not disagreeing that she made it. It's finding, as have numerous other courts, oral communications aren't enough. Where does she say that? I didn't. That's what I'm looking for in the district court opinion is where there's evidence that he weighed. It's at JA 508, Your Honor. Yeah. In the middle of the page here, she says the district court says the disclosure of the EEOC claim was not sufficient to correct misrepresentations in the petition, and then they cite cases. We have added numerous other cases in our brief. And what those courts find is that creditors and the bankruptcy court rely upon documents. They don't rely upon a conversation that happened between a discrimination attorney and a bankruptcy trustee secretary. Anybody trying to find out if Ms. Marshall had an asset here would have looked at the bankruptcy court pleadings that she filed. If you're a creditor and it's being identified that this is a no-asset case, you go look at those pleadings, and she didn't put anything in the pleadings, and then she didn't correct the pleadings. And it was three charges, as you identified, Judge Randolph, and then it was when the lawsuit was filed, she didn't correct them again. And so the bank, none of those creditors looking at those pleadings would have had any knowledge about this lawsuit that she valued at $2 million. What Judge Lambert said, what he actually said is claims of inadvertence or mistake do not excuse filing. And that's absolutely accurate under the state of law of any circuit. The claim itself doesn't excuse it. It's what the underlying analysis of that claim is, whether it gets excused or not. That's exactly right, Judge Randolph. And he looked at the same exact record as this court looked at in Moses and found that you're standing up now and you're saying it was a mistake, but the record reflects a complete comprehension of what you needed to do because you included three lawsuits that were helpful to you. And as Judge Griffith alluded to earlier— What is the difference between—I can't make out. It's the same act of—alleged acts of discrimination, right? The only question is who gets charged with it? I believe there was a changeover in terms of who the contractor was. This was a government contract, and there was a change in who— there was one company that took over for another company, and they were perhaps operating under a subcontract for a third company, and that's why there's three separate charges because there's three separate employers or potential employers. But the acts underlying—the alleged acts underlying the proceedings are the same?  That's right, Your Honor. Do you know whether these three proceedings were consolidated at any point? I think at a certain point Ms. Marshall received right to sue letters and was able to then prosecute this lawsuit. This lawsuit, the one before us now, is a consolidation of all three of the administrative claims? In the lawsuit, Ms. Marshall has brought a lawsuit against those three people that originally she filed the three charges against, those three entities. So what is the significance, if any, of Ms. Marshall telling the trustee only about the Honeywell suit? I mean, that's one way of—a shorthand way of describing it, and then giving her attorney's telephone number to the bankruptcy trustee. There is the conversation she had with the trustee, as you alluded to earlier, but there's no evidence of the interrogatories that have been referenced at some length. The district court's opinion references that the interrogatories were never provided to the district court. The oral communication that occurred between Ms. Marshall and the trustee and the subsequent conversation that occurred between her employment attorney and the trustee's secretary, again, what numerous courts have found is even if those communications occur, they're not enough to overcome the obligation to complete the forms and then correct the forms. Here's a hypothetical. Even if Ms. Marshall had omitted the information from the forms initially, and as you alluded to earlier, according to the bankruptcy court pleading, she was assisted by an individual who was experienced in completing bankruptcy court forms. This was her second bankruptcy, and according to her own testimony, it took her several months to complete the forms. So this wasn't something done overnight over the course of a weekend in haste and in a minute. And she made sure, again, to include the three lawsuits in which she was a defendant. What's the $175? I'm not a bankruptcy court practitioner. Do you know what I'm referring to? I do. I believe that what that form indicated was that the individual who assisted her in completing it was going to make a claim somehow that he was entitled to remuneration in that amount for his efforts. It seems inconsistent with what the plaintiff's counsel said, is that she wasn't charged or she didn't pay. Again, I heard counsel also say that. It may be that the discrepancy is that she never paid anything, but that he agreed that he would be paid later. Yes. What the record reflects, though, is she was assisted by somebody whose job it is to help complete forms in a timely way. Going back to the conversation. What's the filing fee for bankruptcy? I don't know, Your Honor, and I'm not sure, again, if there's an IFP sort of availability. I'm not. Bankruptcy court is one of them. Years ago, there was a Supreme Court case where the claim was the individual was too poor to pay the filing fee for bankruptcy, and the Supreme Court rejected that. I followed up on the case, by the way, about what happened next, and what happened next was the individual paid the bankruptcy fee. Yeah. I think what most of the circuits have found is that oral communications of the sort that occurred here are not enough, again, to overcome the right to complete and update those forms because the forms are what ultimately, when you fast forward this two, three, four, five, six months, and it's being represented that there are no assets here. It is the forms that the creditors look at. It is the forms that the bankruptcy court looks at. They don't look at slips of alleged telephone conversations between secretaries and other attorneys that have been somewhere in the ether. They look at the forms. If Ms. Marshall had omitted information. The district court comments or remarks that he's taking the narrow approach to inadvertence or mistake. Right. He says that after he finds that the facts here are indistinguishable from Moses on inadvertence or mistake. So I'm not sure that's the crux of his opinion. What do you understand to be the narrow approach to inadvertence or mistake? What are the elements of that? Sure. The narrow version of inadvertence or mistake is the one that the majority of courts look at, and what that. . . And there are two elements there, right? One, there is no motive to conceal or. . . Yeah, yeah. And what does that first one mean, knowledge of the information? Well, so. . . Is that the entire end of the laundry list? I don't. . . I'm really not certain about this narrow, broad dichotomy. I mean, for example, it would seem to me relevant, the length of time that transpired between the filing of the bankruptcy petition and if there's a revision or an amendment, the amendment. What intervened? Was the person filing the bankruptcy petition alerted to the fact that they were about to be discovered? I mean, all those factors. And it's true that the two factors you mentioned are the predominant ones, but I don't necessarily see in these cases a decision saying, and we're not going to consider anything else. Judge Randolph. . . Do you know of any? As I read the decisions, the majority of courts, and I'm looking at our brief now on pages 43 and 44, and we cite the courts that apply this, what we're calling the narrow test of mistake or inadvertence. And again, it is what the court says. We look, you know, courts addressing a debtor's failure to satisfy the legal duty of full disclosure have deemed such failure inadvertent or mistaken only when the debtor lacks knowledge of the undisclosed claims or has no motive for their consideration. And my question is, what does that first one mean? Lacks knowledge of the claim. So I think what I've gleaned from the cases is if the record reflects that there was no knowledge. There truly was a mistake here, and I think the best case for that is actually a case that was cited by the appellate, which is the Ryan case of the Third Circuit. In the Ryan case, the court finds it was inadvertent. It was a mistake. But they find that because what they find the debtor did there was the debtor didn't include information about his federal court lawsuit, or it was a company, the federal court lawsuit it was prosecuting, but it also didn't include information about lawsuits in which it was a defendant. It omitted information that was both hurtful and helpful to the defendant. What's an example of where the debtor doesn't know the claim? I think hypothetically, and I've not seen this in the cases, Your Honor, I think hypothetically if at the time you file for bankruptcy you know maybe you've been terminated but you haven't yet, you know, talked to an attorney to find out whether, in fact, this is conduct that would violate the D.C. Human Rights Act or Title VII or some sort of federal statute, and then so at that point you don't yet know. And certainly, okay, that's helpful. And certainly Ms. Marshall doesn't check either of those boxes. I don't think she's in that scenario. But in the broader, let's take the broader view, which is, as I understand it, this sort of subjective intent, this inquiry into what was in the mind of the debtor. And your opponent's argument here is that she just may have been mistaken about what an administrative proceeding makes, and she showed she had no ill will because she told the trustee. Now, we are in equity here, right? We're looking at equity here. We are. How do you respond to this? So I think there's two answers to that. Again, on the first prong, which is she was just mistaken if you look at the documents, I think that that's foreclosed by Moses. If you take out the oral disclosure, we're squarely in Moses' land, and what she's saying there is my conduct in not reading the forms, not understanding what the forms required, understanding the forms required me to include lawsuits that were helpful to me but didn't seem to require me to include three administrative charges in which I was. As a matter of fact, you don't think it's possible that someone could be mistaken about that? I think the circuit held in Moses, as a matter of law, that's how he was mistaken. We'll get to the matter of law in a second. As a matter of fact, you don't think that someone could be mistaken about that? Of course they could. Of course someone could be mistaken about that. I think you're opening the Pandora's box that you alluded to earlier, which is, you know, full-blown trials on what someone's subjective intent was. No, no, but an inquiry into subjective intent, right? And that's what the broader, that's what the Seventh Circuit and others had to do. Is it possible that someone could have mistaken, not understood the forms? Is it possible? Sure. I think what Moses said is not on these facts. Yeah, because there was no oral disclosure. As you pointed out before, we had oral disclosure, so that's the one differentiated between this case and Moses. But what the most of the circuits have said is oral communications don't count. They don't count. At the end of the day, the forms are what count. We require people to fill out the forms completely and accurately, and if something, they discover something, if after Ms. Marshall had this conversation with the trustee and learned that this was information that had been omitted, if she'd amended the forms, we might be in a lot of bigger, different world. But she didn't do that. What happened? She sat quietly and let the court and the creditors close the case as a no-asset case while she's pursuing a $2 million lawsuit. Your time has expired, but before you sit down, tell me exactly what your view is of what happened with respect to the age discrimination charges. When exactly were they filed, and to what extent were they disclosed? I don't believe any of the charges were disclosed, Judge Randolph, without regard for what the claims were in the charges. Wasn't there an age discrimination? There were a variety of charges that were brought, and there were a variety of claims that were initially brought to the federal court, and then there was an amended complaint file that brought additional claims into the court, and some of those claims were then dismissed by the district court below. Honestly, I don't have, standing right here now, awareness of what specifically happened to the age charges and when they went away. I'm not really concerned about that. What I'm concerned about is that by the time, as I understand it, on the timeline, by the time the age discrimination charges are filed, she's already answered the interrogatory, her attorney has had correspondence with her or talked to the bankruptcy trustee. She hasn't amended anything. And what I'm asking is, did she alert, or either her or through her attorney, did she alert the bankruptcy trustee that I filed additional charges? There's no evidence in the entire bankruptcy court docket that anybody at the bankruptcy court or any of the creditors were aware of anything that was going on with respect to Ms. Marshall's claims of discrimination, whether it was the multiple charges, the original claims in the charges, amended charges, or this lawsuit. And I think that's one point of clarification. Before I sit down, I want to make sure it's clear. Ms. Marshall had a conversation with the trustee about the one charge. Her attorney says she had a conversation with the secretary about other charges and brought them up to speed. There is no evidence that the bankruptcy court was aware of these charges or this lawsuit at the time it closed this case as a no-asset case. There was a suggestion earlier that the trustee acted upon this information and alerted creditors to this case and creditors were aware of it and therefore no harm, no foul. There is no evidence of that in the record. The evidence of when the creditors learned about this case was four years later after the district court here forced Ms. Marshall to go back to the bankruptcy court and the trustee was then substituted in and then the trustee properly, and this is, if you want to see this, it's in the record at page 329, 330. This is the trustee actually now for the first time telling creditors there is an asset out there. It is this discrimination lawsuit. I'm about to give it up. Let me know if you think you object to that. But back at the time Ms. Marshall originally filed for bankruptcy and prior to the time the bankruptcy court discharged her case as a no-asset case, even after these conversations, nobody at the bankruptcy court and none of the creditors, there's not one document, and this gets back finally to why oral communications aren't enough. You can have these oral communications, but if the creditors who are not standing there when the communications occur, they rely upon the pleadings, they rely upon the documents, they rely upon time of disclosure, and they rely upon them being amended. And if that doesn't happen, you can't now stand up here nine years later and say, well, I had a conversation with the trustee's secretary, therefore it shows I had no intent to omit this. All right. Thank you very much for your indulgence on the time. I appreciate it. All right. Does counsel have any questions? All right. Why don't you take a minute? One minute. Okay. Why don't you take one minute? Come up to the podium. If you have anything in reply. If you don't. If you have anything in reply, you have one minute. Do I go forward now? Yes. Okay. I'm sorry. First of all, I definitely disagree with the appellee's argument before this court that supposedly there was no evidence in this record that showed that Marshall or myself on behalf of Marshall did not inform the trustee as to the filing of the age discrimination case. Clearly there was. My affidavit that was submitted in this case and is part of the record shows that I informed the trustee. No, that's not what your affidavit says. Through his women. I think not him personally, but his secretary. Receptions. Yeah, his secretary, who called me several times to check to see when the case was going to be filed. But there was no amended filing in the bankruptcy court. No, she didn't know it. I'm not a bankruptcy lawyer. I had no idea. But you're a creditor, aren't you? You filed. I mean, a notice of lien. We do that in Maryland all the time. That's not unusual. Attorney lien. That's just not unusual. That's not unusual. Not unusual. But anyway, what I wanted to say was the secretary called me a couple of times. The trustee even said to me, let me know when you file the age, any case. We only filed the age case because there was a statute of limitations issue. Didn't do anything on that case for about four months. Didn't touch it, told them, didn't do anything. Ms. Marshall never informed. There's no evidence that Ms. Marshall ever informed the trustee or even the trustee's secretary about the age. I think in one of her affidavits she did say she had a conversation with him because she talked to him more than I. I only talked to him that one time. And I think you have to check the affidavits without me going through them. But anyway, I'm just saying his office had knowledge. He filed an application as a trustee to employ himself as an attorney in the case. He didn't discharge the case. He opened the case up because he said there was assets. He did all these things that we talked about, and it had to have been based on the information he got from me and Ms. Marshall. Because they knew about the case. The secretary knew about the case. Now, she's the agent for the trustee. I am sure she told the trustee. Okay. You can't testify. Okay. I mean, that's my interpretation. But thank you, Your Honor.
judges: Henderson, Griffith, Randolph